Filed 5/17/16  L.P. v. Superior Court CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| L.P., | No. H043347 |
| Petitioner, | (Monterey County Super. Ct. No. J48572) |
| v. | |
| THE SUPERIOR COURT OF MONTEREY COUNTY, | |
| Respondent; | |
| DEPARTMENT OF SOCIAL SERVICES, | |
| Real Party in Interest. | |

Petitioner L.P. (father) challenges the juvenile court's order terminating reunification services and setting a Welfare and Institutions Code section 366.26[1] hearing for July 2016.  He claims that the court's ruling was erroneous because he had not been provided with reasonable reunification services.  We reject his contention and deny his petition.

---

[1]  Subsequent statutory references are to the Welfare and Institutions Code unless otherwise specified.

# I. Background

Three-year-old A.P. (the child) was taken into protective custody on June 25, 2015 after E.H. (mother), a methamphetamine addict, left the child and the child's one-year-old half brother in a home with a mentally ill adult who was not even able to care for herself. The home in which the children had been left was unsafe and dirty and lacked sufficient food. The children were dirty, and there were no diapers in the home. The child had bruises and numerous cigarette burns on his body. He was also suffering from severe developmental delays.

After the children were taken into protective custody, mother was arrested on outstanding warrants for previous child endangerment convictions, and she was also charged with a new count of child endangerment (Pen. Code, § 273a, subd. (a).) Father, who had a history of substance abuse, had not been a significant presence in the child's life since the child was a few months old. He had visited the child occasionally thereafter. Father had been convicted of inflicting corporal injury on mother, and there was a current restraining order protecting mother from father. Father was homeless and on probation in Santa Clara County for a burglary conviction. He had been incarcerated as a teenager for sexually abusing his sister.

The Department filed a section 300 petition asking the court to take jurisdiction over the child. Although father was notified of the June 30, 2015 detention hearing, father did not appear at the hearing. The court set a jurisdictional/dispositional hearing for August 11, 2015. By the time of the August 11 hearing, mother had been released from custody. Father had been having weekly one-hour visits with the child, and the visits were appropriate. Father did not appear at the August 11 jurisdictional/dispositional hearing, which the court noted "doesn't bode well for reunification, based on what's going on." The court took jurisdiction over the child, removed him from parental custody, and ordered reunification services for both parents.

Father's case plan required him to participate in a family mental health assessment, to attend and complete parent education classes, to maintain a stable living situation, to attend and participate in a drug and alcohol assessment, to remain drug free, to obey the law and all of his probation conditions, and to submit to random drug testing. He was granted weekly supervised one-hour visits with the child.

In August 2015, the social worker provided father with referrals for parenting classes, drug testing, and a family mental health assessment. He did not avail himself of any of these referrals. Father did not participate in a family mental health assessment despite multiple attempts to contact him and schedule his participation. He attended no parenting classes. Father missed two of his August 2015 weekly visits with the child. His final visit with the child was on September 21, 2015. The social worker met with father that day. She reminded him of the requirements of his case plan and told him that he needed to participate in domestic violence counseling. He told her that he had no domestic violence or substance abuse issues, "had nothing to work on," and was "not eager to start services" at that time. The social worker asked him to drug test that day, but he did not do so and never submitted to any drug testing.

On September 29, 2015, father was incarcerated in Santa Clara County on resisting arrest and narcotics charges and for violating his probation. It was unknown when he might be released from custody. Father made no effort to maintain contact with the Department. He did not appear at the November 2015 interim review hearing. In December 2015, the social worker sent father a "parenting workbook" at the jail by regular mail. This workbook was not refused or returned to sender, but father never completed the workbook. The social worker did not contact the jail to determine what programs were offered at the jail. Father did not appear for the scheduled February 9, 2016 six-month review hearing; the matter was continued to March 7, 2016 for a contested hearing. Father was released from jail on February 25, 2016, but he did not contact the social worker to seek visits, request services, or inquire about the child's

3

well-being. The social worker left a voicemail message for father on March 1, 2016, but he did not return the call.

In her trial brief, father's attorney argued that father lacked the ability to participate in services due to his incarceration and the Department's failure to provide him with "workbooks" during his incarceration. She asserted that father had not been provided with reasonable services and should be granted another six months of services.

Father did not appear at the scheduled March 7, 2016 contested six-month review hearing. The hearing was continued to the next morning. Father did not appear at the morning or afternoon hearings the following day. His attorney did not seek a continuance. At the hearing, the social worker testified that the reports that she had sent to father at the jail by certified mail in January and February 2016 had been "refused" and returned to sender. Father's attorney argued that he had not been provided with reasonable services because the social worker had not provided him with any services while he was incarcerated.

The court expressly found that father had been provided with reasonable services, "and he failed to take advantage of them." It found that he did not "work on the workbooks" that were given to him while he was incarcerated. He also made no effort to keep in contact with the social worker. The court terminated reunification services to both parents and set a section 366.26 hearing for July 5, 2016. Father timely filed a notice of intent to file a writ petition challenging the court's order.

## II. Analysis

Father claims that he was not provided with reasonable services because the social worker did not inquire as to what services were available to father at the jail, and she did not follow "the jail's mail guidelines" in sending father mail while he was incarcerated.

"If the child was under three years of age on the date of the initial removal, or is a member of a sibling group described in subparagraph (C) of paragraph (1) of subdivision

(a) of Section 361.5[²], and the court finds by clear and convincing evidence that the parent failed to participate regularly and make substantive progress in a court-ordered treatment plan, [at the six-month review hearing] the court may schedule a hearing pursuant to Section 366.26 within 120 days. If, however, the court finds there is a substantial probability that the child, who was under three years of age on the date of initial removal or is a member of a sibling group described in subparagraph (C) of paragraph (1) of subdivision (a) of Section 361.5, may be returned to his or her parent or legal guardian within six months *or that reasonable services have not been provided*, the court shall continue the case to the 12-month permanency hearing." (§ 366.21, subd. (e)(3), italics added.)

Father does not challenge the court's finding that the child was a member of a sibling group or its finding that there was not a substantial probability that the child could be returned to parental custody within six months after the six-month review hearing. Nor does he assert that the case plan was inadequate. He claims only that the Department failed to provide reasonable reunification services.

Father's case plan required participation in a mental health assessment. Multiple attempts were made in August and September 2015, before father was incarcerated, to obtain father's participation in this assessment. He refused to cooperate. Father's case plan required him to attend and complete parent education classes. The original social worker referred him to parenting classes more than a month before he was incarcerated, but he did not attend any parenting classes. The second social worker sent him a "parenting workbook" while he was incarcerated, months before the six-month review hearing. Father did not complete the workbook or return it to the social worker. His case plan required him to attend and participate in a drug and alcohol assessment and to

---

²      If one member of a sibling group is under the age of three, the six-month limitation may be applied to all members of the group. (§ 361.5, subd. (a)(1)(C).)

submit to random drug testing. The social workers gave him referrals for drug testing and asked him to drug test prior to his incarceration, but he did not.

Father insists that the services provided to him were inadequate because the social worker did not inquire as to what services were available to him at the jail. Father refused to participate in a mental health assessment or to drug test when he was not incarcerated. Any inquiry about the availability of drug testing at the jail would have served little purpose since father's ability to remain drug-free while incarcerated was of little relevance. As multiple attempts to encourage father to participate in a family mental health assessment before father was incarcerated had failed due to father's lack of cooperation, there did not appear to be any purpose to be served by an inquiry as to whether such an assessment could be obtained at the jail. The social worker might have been able to discover whether parenting classes were available at the jail by making an inquiry. However, her provision of a parenting workbook to father during his incarceration coupled with his failure to utilize it and his adamant refusal to engage in services prior to his incarceration established that such an inquiry would have been futile and was not reasonably required. Father was not deprived of reasonable services. He refused to engage in services and exhibited such little interest in the child that he attended none of the hearings and made no attempt to keep in contact with the social worker.

Father's contention regarding the jail's "mail guidelines" is meritless. The only items that the social worker sent to father by certified mail at the jail were reports, not materials that could have helped him satisfy his case plan. The parenting workbook was not sent by certified mail, so it plainly complied with the jail's "mail guidelines," which father claims prohibited jail inmates from receiving certified mail. The social worker's failure to inquire about the jail's "mail guidelines" did not have any impact on the provision of reasonable services to father.

## III. Disposition

The petition is denied.

_____

Mihara, J.

WE CONCUR:


_____

Elia, Acting P. J.


_____

Bamattre-Manoukian, J.

8